1  Douglas R. Pahl, OSB No. 950476
   DPahl@perkinscoie.com
2  PERKINS COIE LLP
   1120 N.W. Couch Street, 10th Floor
3  Portland, OR  97209-4128
   Telephone:  503.727.2000
4  Facsimile:  503.727.2222

5  Attorneys for Machine Zone, Inc.

6

7                  UNITED STATES BANKRUPTCY COURT

8                    FOR THE DISTRICT OF OREGON

9  In re                                    Case No. 16-32311-pcm11

10 Peak Web, LLC,

11              Debtor.

12 ─────────────────────────────

13 MACHINE ZONE, INC.,                      **Adv. Pro. No. 16-03083-pcm**

              Plaintiff,
14
   PEAK WEB, INC.                           (Superior Court of California, County of Santa
15                                          Clara No. 15-cv-288498)
              Defendant.
16 ─────────────────────────────

17 PEAK WEB, INC.
                                            (Superior Court of California, County of Santa
18            Plaintiff,                    Clara No. 15-cv-288681)

19 MACHINE ZONE, INC., EPIC WAR
   LLC, and DOES 1 through 10, inclusive    OBJECTION OF MACHINE ZONE, INC. TO
20                                          DEBTOR'S AMENDED MOTION FOR
              Defendant.                    ABSTENTION AND TO REMAND
21

22 ─────────────────────────────

23         The Litigation[1] between the Debtor and Machine Zone is, by the Debtor's admission,

24 inextricably linked to the Debtor's chapter 11 case.  Machine Zone's damages claim against the

25

26 ─────────────────────────────
   [1] The Debtor and Machine Zone are parties to two consolidated cases that were filed in state court in California:  the
   first-filed case, *Machine Zone, Inc. v. Peak Web, LLC*, No. 1-15-cv-288498 (Cal. Superior Ct., Santa Clara County);

PAGE   1-    OBJECTION OF MACHINE ZONE TO DEBTOR'S
132252723.3   AMENDED MOTION FOR ABSTENTION AND REMAND

                                         **Perkins Coie LLP**
                                    1120 N.W. Couch Street, 10th Floor
                                      Portland, OR  97209-4128
                                        Phone:  503.727.2000
                                         Fax:  503.727.2222

1  Debtor for breach of contract and fraud is approximately $23 million, which would make

2  Machine Zone by far the Debtor's largest creditor. The Debtor's counter-assertions against

3  Machine Zone are for nearly $100 million, which would be the largest asset of the Debtor's

4  estate, if the Debtor's claims had merit. The Litigation arises from disputes related to the

5  Debtor's former operation of a data center in Texas that provided network services to Machine

6  Zone under a services agreement executed in March 2015. After the Debtor caused a series of

7  devastating network outages at its data center that severely impacted Machine Zone's operations

8  and its revenue, Machine Zone terminated the agreement in accordance with its terms.

9       The Debtor's motion for abstention or remand should be denied. First, this Court ruled

10  that removal and the subsequent transfer to this District of the Litigation did not violate the

11  automatic stay, and therefore abstention does not apply. Second, the factors governing remand

12  favor this Court retaining jurisdiction over the Litigation. The Debtor's motion is based largely

13  on the unsupported premise that Machine Zone's desire to litigate this case away from its home

14  forum in Santa Clara County is a "tactical decision." In reality, it was the Debtor's decision to

15  move its headquarters to Oregon and then to file a bankruptcy petition in this Court that

16  materially altered the question of where the Litigation should proceed. Now that the Debtor has

17  elected to move its place of business to Oregon and to file its bankruptcy here, having the

18  Litigation also proceed here is the clear path to resolving both the bankruptcy and the Litigation

19  most efficiently. By the Debtor's own admission, the resolution of this bankruptcy case will

20  depend upon the outcome of the Litigation. In the context of plan confirmation, this Court will

21  be called upon to address issues relating to the Litigation, potentially including estimation of

22

23  ───────────────────────────────────────────

24  and a subsequently-filed case, *Peak Web, LLC v. Machine Zone, Inc.*, et al., No. 1-15-cv-288681(Cal. Superior Ct., Santa Clara County) (collectively, the "Litigation"). Machine Zone removed the Litigation to the United States Bankruptcy Court for the Northern District of California on June 27, 2016, and the parties stipulated to the transfer

25  of the Litigation to the District of Oregon on July 8, 2016. The parties' stipulation was approved on July 15, 2016, and the Litigation was transferred to the District of Oregon. The District Court referred the Litigation to this Court

26  on July 21, 2016.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

PAGE 2- OBJECTION OF MACHINE ZONE TO DEBTOR'S
AMENDED MOTION FOR ABSTENTION AND REMAND

132252723.3

1   Machine Zone's claims against the Debtor.[2]  Moreover, this Court is already more familiar with

2   the Debtor and with the disputes between the Debtor and Machine Zone than is the state court,

3   which has held only one *ex parte* hearing about seven months ago (denying the Debtor's request

4   for a TRO and a writ) and one case management conference.  By contrast, this Court has already

5   held multiple hearings and issued several orders on motions related to the Litigation.

6           Certainly the state court judge is very capable of presiding over the Litigation.  But given

7   the Debtor's decision to leave California for Oregon, its decision to file its chapter 11 case in this

8   district, and the inevitable overlap between the chapter 11 case and the Litigation, it will be much

9   more efficient, considerably less expensive, and will avoid duplication of effort by the parties

10  and the courts for the Litigation to proceed here in Oregon.

11  **I.      Factual Background**

12          **A.      The Parties**

13          Machine Zone is an innovator and developer of massively multiplayer, free-to-play

14  online games, including *Game of War:  Fire Age* ("Game of War").  Game of War users

15  download the application (or app) on their mobile devices, build kingdoms and compete to "rule

16  the [virtual] world" while interacting in real-time with other players around the globe.  First

17  released in July 2013, Game of War has been an immense success on a global scale earning a #1

18  ranking in Apple's app store.  Epic War LLC is a California limited liability company that is

19  affiliated with Machine Zone and is listed as the developer of the game title Mobile Strike, which

20  has achieved success on a similar level to Game of War.

21          The Debtor (or "Peak") offers network infrastructure services.  When Peak first filed its

22  Complaint against Machine Zone in this Litigation in December 2015, it alleged that its

23  headquarters were in Rancho Cucamonga, California.  *See* Decl. of Sean M. Callagy, a copy of

24  which is attached hereto as Exhibit A ("Callagy Decl.") at ¶ 1 and Ex. 3.  Peak now alleges in

25  _____

26  [2] Machine Zone's mentioning the possibility of an estimation proceeding is not intended as consent to any such
    estimation, and Machine Zone reserves the right to object to any estimation motion.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1    this chapter 11 case that its headquarters are in Wilsonville, Oregon.  The Debtor's principal,

2    Jeffrey Papen, who according to the Debtor will play a critical role in the Litigation, also works

3    and lives in Oregon.  Callagy Decl. at ¶ 4 and Ex. 4.

4        **B.      The Agreement**

5        The unique gameplay in Game of War and Mobile Strike takes place 24 hours a day, 7

6    days a week and requires players to take action in real-time.  Because its games are free-to-play,

7    Machine Zone makes money only when players make in-game purchases.  Thus, it is critical that

8    the game always be running; even short periods of downtime significantly harm Machine Zone's

9    ability to generate revenue.  Accordingly, Machine Zone places a high premium on continuous

10   gameplay and insists on using data centers that follow so-called Tier IV standards, the most

11   robust level available.  To induce Machine Zone to do business with it, Peak repeatedly and

12   emphatically assured Machine Zone of its expertise, referred Machine Zone to its alleged roster

13   of existing high profile clients, such as Uber, and represented to Machine Zone that it offered

14   data centers that followed those industry standard best practices and guaranteed that its network

15   would be "always up."  In reliance on these representations, Machine Zone agreed to contract

16   with Peak to host its mobile games in Peak data centers.

17       In March 2015, Peak and Machine Zone negotiated the terms of a Master Services

18   Agreement (the "Agreement").  Callagy Decl. at ¶ 1 and Ex. 1.  Machine Zone had the right to

19   terminate the Agreement for cause in the event of a "Material Breach" by Peak, if Peak failed to

20   meet a service level requirement three times in any calendar quarter.  The Agreement also

21   provided that even single outages could accrue more than one "Strike."  Thus, the Agreement

22   expressly gave Machine Zone the right to terminate if Peak did not perform as it promised it

23   would.

24       **C.      Peak's Network Outages Force Machine Zone to Terminate the Agreement.**

25       Peak's representations turned out to be false.  Machine Zone has later learned that Peak's

26   performance had been a continual issue for prior customers, including marquee customers Peak

PAGE   4-      OBJECTION OF MACHINE ZONE TO DEBTOR'S
               AMENDED MOTION FOR ABSTENTION AND REMAND

132252723.3

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

1  highlighted in its effort to induce Machine Zone to sign up.  Not surprisingly in retrospect, from

2  the beginning Machine Zone suffered significant problems with outages at Peak's data centers

3  caused by Peak's mistakes.  Peak initially admitted to failing to comply with the Agreement.

4  However, as Peak's data centers continued to cause crashes, Peak began to refuse to

5  acknowledge its role in causing these outages, blaming them alternatively on Machine Zone or

6  on "bugs" in the software or hardware used by Peak.  An audit of Peak's facilities revealed that

7  Peak was failing in multiple regards to adhere to standard practices for Tier-IV data centers—as

8  it had promised to do.

9  On October 27, 2015, Peak's substandard network architecture caused a massive

10  sequence of outages, which shut down Machine Zone's primary product for hours, causing

11  immediate loss of revenue, huge risks to customer retention, and expensive remediation efforts.

12  Peak's failures resulted in sufficient "Strikes" under the Agreement, triggering Machine Zone's

13  right to terminate the Agreement for cause.  To prevent further harm to its business, Machine

14  Zone invoked its contractual right and provided notice of termination of Peak's services.[3]

15  To ensure the integrity of its game, Machine Zone migrated operations from Peak to a

16  data center in Las Vegas that had initially been planned as a disaster recovery back-up facility for

17  Peak's facility (with Peak's knowledge).  Good thing, because moving to the Las Vegas data

18  center saved Machine Zone's business.[4]  Peak now alleges that Machine Zone used Peak's

19  (ambiguously defined) "trade secrets" and "proprietary information" to build the Las Vegas data

20  center—a contention that lacks any basis.[5]

21  [3] In November, Peak experienced multiple additional outages affecting Machine Zone, further confirming that
22  termination was warranted.  Peak's attempt to dispute Machine Zone's right to terminate has been to try to blame
one of its equipment suppliers, Cisco.  However, it is clear that Peak set up its systems incorrectly, causing the
service outages regardless of any supposed issues with Cisco.
23  [4] Machine Zone designed the Las Vegas data facility with the assistance of another company's "knowledge of
industry standard and manufacturer recommended best practices" without using or incorporating any features that
24  could be considered unique to Peak's data hosting facilities.
25  [5] The Agreement is a service agreement, not a license to intellectual property or other rights.  As such, it expressly
contemplated that Machine Zone would have access to Peak's data centers to audit and supervise Peak.  The
Agreement did not state anything about data center design or operations being confidential, and Peak never
26  identified *anything* about its operation as confidential during course of their business relationship.  Moreover,

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## II. PROGRESS OF THE LITIGATION TO DATE

### A. Commencement of the Litigation

Seeking damages for the harm Peak caused it, and to confirm its right to terminate the Agreement over Peak's protests, on November 25, 2015, Machine Zone filed its Complaint against Peak in the Superior Court of California, County of Santa Clara. Callagy Decl. at ¶ 3. Machine Zone alleges that Peak made false promises to induce it to hire Peak and that Peak's substandard network architecture then failed to meet industry standards causing numerous network outages, as described above. Machine Zone seeks approximately $23 million in damages and a declaration of its right to the terminate the Agreement with cause.

Not willing to acknowledge that its own repeated network outages led to termination of the Agreement, on December 3, 2015, Peak filed a responsive complaint against Machine Zone and Epic War in the same court. Callagy Decl. at ¶ 3. Peak alleges that Machine Zone breached the Agreement by terminating early and built its Las Vegas data center using Peak's trade secrets and confidential information. Peak seeks over $97.3 million in damages, based largely on the theory that a penalty should apply to Machine Zone's termination of the Agreement, as well as additional monetary damages. On January 4, 2016, the state court issued an order deeming the case complex and staying discovery and response deadlines. Callagy Decl. ¶ 6 and Ex. 5. On January 14, 2016, by stipulation, the cases were consolidated. Callagy Decl. at ¶ 7 and Ex. 6.

On January 15, Peak notified Machine Zone that it would appear *ex parte* to seek a TRO unless Machine Zone immediately agreed to a stipulated TRO, and that it would move for a writ of attachment. Callagy Decl. at ¶ 8 and Ex. 7. Machine Zone declined to agree and opposed the *ex parte* applications – both of which the court then denied. Callagy Decl. at ¶ 9 and Ex. 8.

Peak's repeated efforts to characterize Machine Zone as obstructing mediation during the discovery stay are false. Peak admits that its proposal for "early mediation" in December 2015

---

Machine Zone could have no conceivable interest in replicating a data center that was causing severe problems for its operations, and the vastly different design of Machine Zone's data center reflects that.

OBJECTION OF MACHINE ZONE TO DEBTOR'S
AMENDED MOTION FOR ABSTENTION AND REMAND

132252723.3

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1   was conditioned on Machine Zone "stipulat[ing] to maintaining the status quo while [the parties]

2   attempt to mediate the dispute."  In other words, Peak's proposal required Machine Zone to

3   stipulate to a baseless TRO (the TRO that the state court denied) and/or continue to use network

4   services whose failures were threatening to destroy Machine Zone's business.  Once the TRO

5   issue was resolved, Machine Zone *immediately* agreed to mediate.  In March 2016, the parties

6   attended mediation but did not reach a settlement.  Callagy Decl. at ¶ 10.

7           On March 25, 2016, the California court held an initial case management conference,

8   setting trial for March 2017 and lifting the stay on discovery.  Since that time, the parties have

9   exchanged preliminary written discovery, but not a single document has been produced between

10  the parties and no depositions have occurred.[6]  Callagy Decl. ¶ 11. Neither party has answered

11  or otherwise responded to either Complaint.

12          **B.      Peak Files for Bankruptcy**

13          On June 13, 2016, Peak filed a voluntary chapter 11 petition in this Court.  While

14  Machine Zone is by far Peak's largest creditor owing to its claims in the Litigation, Peak omitted

15  Machine Zone from its initial list of creditors and did not provide Machine Zone with notice of

16  its chapter 11 filing.  Despite the exclusion of Machine Zone, the Litigation immediately took

17  center stage in this case.  Along with customary first-day motions, Peak also filed two motions

18  directly related to the Litigation: (1) an application to employ special counsel to represent Peak

19  in the Litigation; and (2) a motion to obtain financing from an insider to pay Litigation expenses.

20  These motions contained a detailed discussion of the Litigation, including a discussion of the

21  nexus between the Litigation and the chapter 11 case.

22          The first day hearing in this Court on June 15, 2016 – which the Debtor elected not to

23  notify Machine Zone of – also focused largely on issues related to the Litigation.  Peak made

24

25  [6] In its discovery responses, it was Peak that has refused to produce even a single document; Peak instead responded to all of Machine Zone's requests for production of documents by either objecting *in toto* or saying that it is "willing" to produce documents only *after* the parties have met and conferred about the scope of the request.

26  Callagy Decl. ¶ 11 and Ex. 9.

PAGE   7-      OBJECTION OF MACHINE ZONE TO DEBTOR'S
                AMENDED MOTION FOR ABSTENTION AND REMAND

132252723.3

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm     Doc 32     Filed 08/08/16

clear that its plan of reorganization would directly depend on the outcome of the Litigation:  "As a preview of what the plan's going to be . . . we are going to give the unsecured creditors a piece of the pie in the litigation, obviously.  So the waterfall in the litigation will go to repay the litigation loan, repay Bank of the West, and then pay all the unsecured creditors.  So they are all beneficiaries of this process."  Peak further explained that it expected to create a "litigation trust and give the creditors' committee a seat on that" so that they can "control the litigation."

**C.    Machine Zone's Removal and Transfer of the Litigation to this Court**

In light of the Debtor's move from California to Oregon, its bankruptcy filing in this Court, the clear nexus between the chapter 11 case and the Litigation, and the fact that this Court will inevitably be called upon to address matters relating to the Litigation, Machine Zone determined that it would be most efficient to remove the Litigation to federal court and seek to transfer it to this Court.  Accordingly, on June 27, 2016, after notifying the parties and this Court that it intended to do so, Machine Zone removed the Litigation to the Northern District of California Bankruptcy Court, noting in its removal notice that it intended to seek transfer of the Litigation to this district.  Pursuant to the parties' post-removal stipulation, the Northern District of California Bankruptcy Court entered an order on July 15, 2016, transferring the Litigation to the District of Oregon.  The District Court referred the Litigation to this Court on July 21, 2016.  Peak filed the Motion for Abstention and to Remand on July 22, 2016 (and filed an amended version on July 25).  The California state court has vacated the trial date and all other deadlines applicable to the Litigation in state court.  Callagy Decl. at ¶ 12 and Ex. 10.

Peak initially agreed to stipulate, as part of the transfer of venue to this district, that it would not allege that removal of the Litigation violated the automatic stay, but it later reneged on that agreement.  Accordingly, on July 8, 2016, Machine Zone filed a Motion for a Determination That the Automatic Stay Does Not Preclude Removal of Litigation Between Debtor and Machine Zone, Inc. or in the Alternative for Relief From the Automatic Stay to Permit Prior Removal and Transfer of Venue (ECF No. 144) (the "Motion for Determination"), seeking a determination that

1  removal of the Litigation and the subsequent transfer to this District did not violate the automatic

2  stay, or in the alternative seeking retroactive relief from the stay to permit removal and transfer of

3  venue.  The Court granted the Motion for Determination by oral ruling on August 4, 2016,

4  concluding that removal and the subsequent transfer of the Litigation did not violate the

5  automatic stay.  Because the Litigation has been removed from state court, there is no longer a

6  pending state court proceeding.

7  **MACHINE ZONE'S OBJECTION TO DEBTOR'S MOTION TO REMAND**

8  **III.    Abstention Does Not Apply Once Litigation Is Removed from State Court.**

9           Once a proceeding has been removed from state court, abstention under 28 U.S.C. § 1334

10  no longer applies because removal extinguishes the predicate state court action.  *Schulman v.*

11  *California* (*In re Lazar*), 237 F.3d 967, 981 (9th Cir. 2001) (upon removal of a state court action,

12  no state proceeding exists, "[a]ccordingly, because there is no pending state proceeding,

13  §§ 1334(c)(1) and 1334(c)(2) are simply inapplicable to this case."); *Security Farms v. Int'l Bhd.*

14  *of Teamsters*, 124 F.3d 999 (9th Cir. 1997) ("Abstention can exist only where there is a parallel

15  proceeding in state court.").[7]  The doctrine set forth in *Lazar* and *Security Farms* applies to both

16  mandatory and discretionary abstention.  *Lazar* and *Security Farms* both specifically cited

17  28 U.S.C. § 1334(c)(1), discretionary abstention, and 28 U.S.C. § 1334(c)(2), mandatory

18  abstention.  *In re Lazar*, 237 F.3d at 981; *Security Farms*, 124 F.3d at 1010 ("Section 1334(c)

19  abstention … applies only in those case in which there is a related proceeding that either permits

20  abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires

21

22  [7] *See also McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.*, 285 B.R. 460, 475 (D. Or. 2002) ("[t]he mandatory and permissive abstention principles of § 1334 apply only in cases in which there is a related proceeding pending in state court … [w]hen a case has been removed to federal court, the state case ceases to exist and § 1334 is no longer applicable."); *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 760 (Bankr. S.D. Cal. 2007) ("on two occasions the Ninth Circuit has held the abstention doctrine is inapplicable if there is no related proceeding in the state court … [t]he Debtor's removal of these actions from the state court means there is no longer a parallel state court proceeding.  Accordingly, as a matter of law, abstention is in applicable."); *In re Roman Catholic Archbishop of Portland in Or.*, 338 B.R. 414, 420 (Bankr. D. Or. 2006) ("as the parties recognize, in the Ninth Circuit, abstention is not applicable once a proceeding is removed to federal court, because there is no pending state court proceeding.").

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

1  it, section 1334(c)(2).”); *see also McDowell*, 285 B.R. at 475.  This Ninth Circuit precedent

2  prohibits consideration of the Debtor's abstention motion as a matter of law.  *In re Roman*

3  *Catholic Bishop of San Diego*, 374 B.R. at 760.  The Debtor's counsel acknowledged as much at

4  the July 27, 2016 hearing on the Motion for Determination: “Based on Ninth Circuit law, I agree

5  that if both cases have been removed we would not be able to argue mandatory abstention.”

6  Transcript of July 27, 2016 Hearing, audio at 47:10-16.

7        Because Machine Zone removed the Litigation from state court, and this Court held that

8  such removal was not precluded by the automatic stay, under *Lazar* and *Security Farms* there is

9  no pending state court action with respect to which this Court can consider the Debtor's

10  abstention motion.  Abstention is inapplicable as a matter of law, and the Court should therefore

11  deny the Debtor's abstention request.

12  **IV.    The Court Should Deny the Debtor's Remand Request.**

13        The Court should also deny the Debtor's remand request.  Courts have discretion in

14  considering a remand request, and in doing so generally apply a multi-factor analysis.  *In re*

15  *Sequoia Village, LLC*, 2012 WL 478926 at *1 (Bankr. D. Or. Feb. 14, 2012).[8]  When a state law

16  proceeding has been removed to bankruptcy court from state court, courts in the Ninth Circuit

17  generally consider the following “*Cedar Funding*” factors in deciding a remand motion:

18        (1) the effect or lack thereof on the efficient administration of the estate if the court
            remands;
19        (2) the extent to which state law issues predominate over bankruptcy issues;
          (3) whether there are difficult or unsettled issues under applicable law;
20        (4) the presence of any related proceeding commenced in state court or other non-
            bankruptcy proceedings;
21        (5) whether there is any jurisdictional basis other than 28 U.S.C. § 1334;
          (6) the degree of relatedness of the proceeding to the main bankruptcy case;
22        (7) the substance, rather than the form, of an asserted core proceeding;
          (8) the feasibility of severing state law claims from core bankruptcy matters to allow
23          state court judgments to be enforced by the bankruptcy court;

24

25  [8] Were the Court to hold that discretionary abstention was applicable in this case, the same analysis would apply.
    *Fed. Home Loan Bank of Chicago v. Banc of Am. Securities LLC*, 448 B.R. 517, 525 (C.D. Cal. 2011) (same factors
    apply to remand and discretionary abstention); *In re Roman Catholic Archbishop of Portland in Or.*, 338 B.R. 414,
26  420 (Bankr. D. Or. 2006).  However, as discussed above, abstention is inapplicable as a matter of law.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

1  (9) the burden on the bankruptcy court's docket;
   (10) the likelihood that the commencement of the proceeding in bankruptcy court
2  involves forum shopping by one of the parties;
   (11) the existence of a right to jury trial;
3  (12) the presence of non-debtor parties in the proceeding;
   (13) comity; and
4  (14) the possibility of prejudice to other parties in the action.

5  *Nilson v. Neilson* (*In re Cedar Funding, Inc.*), 419 B.R. 807, 820 n.18 (B.A.P. 9th Cir.

6  2009); *In re Roman Catholic Archbishop of Portland in Or.*, 338 B.R. at 420. Here, each of the

7  factors, to the extent it is applicable, favors denial of remand.

8  **A.    Denying Remand Will Allow More Efficient Administration of the Estate.**

9  This Court should retain jurisdiction of the Litigation because doing so will result in

10 more efficient administration of the Debtor's estate. "The 'centralized resolution of bankruptcy

11 claims' and 'the avoidance of piecemeal litigation' are fundamental purposes of the Bankruptcy

12 Code." *In re Rader*, 488 B.R. 406, 416 (B.A.P. 9th Cir. 2013). Here, the Debtor believes that

13 the Litigation is a critical element of its bankruptcy case, Tr. of June 15, 2016 Hearing at 32:3-

14 11. Machine Zone agrees. Resolution of the Litigation could result in Machine Zone holding a

15 $23 million claim against the Debtor, making Machine Zone by far the largest creditor.

16 Alternatively, if the Debtor were to obtain a recovery against Machine Zone, any such recovery

17 would be property of the estate. Either way, the Litigation will have substantial impact on the

18 Debtor's estate, and the size of the potential claims justifies denial of remand. *Senorx, Inc. v.*

19 *Coudert Bros., LLP*, 2007 WL 1520966 at *3 (N.D. Cal. May 24, 2007) (denying motion to

20 remand in part because "the resolution of this case will have a significant effect on the

21 bankruptcy estate … [t]he large amount of money at stake in this litigation has the potential to

22 greatly reduce the bankruptcy estate and constitutes a significant potential liability for the

23 debtor."); *In re Neel*, 2016 WL 3922904 at *4 (Bankr. D. Or. June 14, 2016); *In re Sequoia*

24 *Village, LLC*, 2012 WL 478926 at *2 (Bankr. D. Or. Feb. 14, 2012) ("As the bankruptcy cases…

25 depend on the outcome of the matters under litigation, it would serve the best interests of both

26 bankruptcy estates if the matter were heard by the same court with the same time table."); *In re*

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1  *AmericanWest Bancorporation*, 2011 WL 6013779 at *2-3 (Bankr. E.D. Wash. Dec. 2, 2011)

2  (where litigation claims would have a substantial impact on creditor recoveries, the effect of the

3  litigation on the bankruptcy favored denial of remand).

4      As a result of the proceedings to date (including several motion hearings relating

5  specifically to the Litigation), this Court has been provided substantial background concerning

6  the Litigation, as well as information concerning the Debtor and its business, its principal, its

7  financing, its creditors, other parties in the case.  At this point, this Court is far more familiar

8  with the Debtor's circumstances, as well as with the Litigation, than the state court, which held

9  only the *ex parte* hearing seven months ago and one case management conference in March, and

10  has since vacated all deadlines, including the trial date.  Callagy Decl. ¶ 12 and Ex. 10.  As the

11  Debtor's chapter 11 case proceeds, the Court will continue to gain familiarity with the Debtor

12  and with issues bearing on the Litigation.  As a result, this Court will be in as good, or better,

13  position than a state court to conduct the Litigation.  *See In re Maria Vista Estates*, 2016 WL

14  1381769 at *12 (Bankr. C.D. Cal. Apr. 5, 2016) (bankruptcy court stated that because of its

15  familiarity with the debtor, "retention of the proceeding will promote judicial economy and

16  facilitate the efficient administration of the … bankruptcy case.").

17      Indeed, even if the Litigation were to be remanded to state court, this Court is likely to be

18  called upon to delve into its merits, including in connection with Machine Zone's ability to vote

19  its $23 million claim on a plan (potentially including "temporary allowance" issues under

20  Bankruptcy Rule 3018(a)), the status of Machine Zone's claim as secured or unsecured under a

21  plan in light of the right of setoff, potential claim estimation proceedings under section 502(c) of

22  the Bankruptcy Code, Machine Zone's treatment under a plan, feasibility issues which may

23  depend upon an evaluation of the Litigation, and in other respects.  Remand would thus result in

24  two different courts dealing with the Litigation. That is not efficient.

25      For all of these reasons, this Court is the most efficient venue for the Litigation to

26  proceed.  Retaining jurisdiction over the Litigation will further the bankruptcy policy of

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

1    providing a forum for the "centralized resolution of bankruptcy claims" and "the avoidance of

2    piecemeal litigation." *In re Rader*, 488 B.R. at 416.

3         **B.**     **This Court Can Determine and Apply State Law in the Litigation.**

4        The second and third *Cedar Funding* factors – the "extent to which state law issues

5    predominate over bankruptcy issues," and the "difficult or unsettled nature of applicable law" –

6    do not support remand of the Litigation. "Despite the presence of state law claims and the need

7    to interpret a state statute, bankruptcy courts are capable of resolving issues of state law …."

8    *Senorx, Inc. v. Coudert Bros., LLP*, 2007 WL 1520966 at *3. As the Debtor acknowledged,

9    "there is no doubt that this Court is capable of determining issues of state law." Motion at 17.

10       The Litigation involves "state law claims [that] are not unusual and are well settled," and

11    "are the type of issues commonly alleged in commercial litigation." *In re AmericanWest*

12    *Bancorporation*, 2011 WL 6013779 at *3-4. Machine Zone seeks a declaratory judgment that it

13    properly terminated its agreement with the Debtor and damages resulting from the Debtor's

14    failure to perform, and the Debtor seeks damages from Machine Zone for its alleged wrongful

15    termination of the agreement, as well as for the alleged misappropriation of trade secrets. The

16    contract claims are straightforward issues involving contractual interpretation and the calculation

17    of damages, if any, owed to either party. Bankruptcy courts are frequently called on to

18    determine parties' contractual rights and resulting damages under applicable non-bankruptcy

19    law, whether as part of the claims allowance process, in connection with motions to assume or

20    reject executory contracts or, as here, in adversary proceedings. There is no reason that this

21    Court cannot resolve similar issues with respect to the contractual dispute between Machine

22    Zone and the Debtor.

23       With respect to the "trade secret" claims, there is a well-established body of case law to

24    guide the Court. Much of the law governing Peak's trade secret claim is not unique to

25    California, as the California statue is based largely on the Uniform Trade Secrets Act, which

26    both California and Oregon (and nearly all other states) have adopted. *See Vesta Corp. v.*

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1   *Amdocs Mgmt. Ltd.*, 129 F. Supp. 3d 1012, 1039 (D. Or. 2015) (granting motion to transfer under

2   28 U.S.C. § 1404 and noting that "while the parties vigorously argue about which state law

3   applies to the trade secret misappropriation claim, both Texas and Oregon have adopted the

4   Uniform Trade Secrets Act ('UTSA') and thus the laws of both states are likely to yield the same

5   results."); *Computer Econ., Inc. v. Gartner Grp.,* 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999)

6   (California is "one of many states to adopt the Uniform Trade Secrets Act").  Contrary to the

7   Debtor's suggestion, there is ample precedent on the trade secret and confidentiality matters at

8   issue in the Litigation, and this Court is fully capable of applying that well-established precedent

9   to the facts of the Litigation.  Indeed, there are many instances in which bankruptcy courts have

10  decided trade secret cases.[9]

11          **C.      There Is No Related Proceeding in State Court.**

12          The fourth *Cedar Funding* factor weighs against remand.  As discussed above, under

13  Ninth Circuit precedent, once a proceeding is removed from state court, there is no longer a state

14  court proceeding.  *See supra*, Section III. This Court held that the removal of the Litigation was

15  valid and not prohibited by the automatic stay.  Accordingly, there is no pending state court

16  proceeding related to the Litigation and this factor weighs against remand.

17

18

19  _____

    [9] *See, e.g.*, *In re RnD Eng'g, LLC*, 546 B.R. 738 (Bankr. E.D. Mich. 2016) (conducting trial and rendering judgment
20  on claims against debtors for misappropriation of trade secrets under Michigan Uniform Trade Secrets Act); *Messer
    v. Collins (In re Collins)*, 540 B.R. 54 (Bankr. E.D.N.Y. 2015) (finding trustee's allegations sufficient to state a
21  claim for misappropriation of trade secrets under New York law); *Khatib v. Sun-Times Media Grp., Inc. (In re
    Chicago Newspapers Liquidation Corp.)*, 490 B.R. 487 (Bankr. D. Del. 2013) (dismissing claim against debtors'
22  liquidating trust for trade secret misappropriation under Illinois Trade Secrets Act); *TXCO Res., Inc. v. Peregrine
    Petroleum, LLC (In re TXCO Res., Inc.)*, 475 B.R. 781 (Bankr. W.D. Tex. 2012) (conducting trial and rendering
23  judgment on debtor's claims for misappropriation of trade secrets under Texas law); *Maxxim Med., Inc. v. Prof'l
    Hosp. Supply, Inc. (In re Maxxim Med. Grp., Inc.)*, 434 B.R. 660 (Bankr. M.D. Fla. 2010) (conducting trial and
24  rendering judgment on debtor's claims for breach of contract and misappropriation of trade secrets under Florida's
    Uniform Trade Secrets Act); *In re Cross Media Mktg. Corp. v. CAB Mktg., Inc. (In re Cross Media Mktg.)*, 367 B.R.
25  435 (Bankr. S.D.N.Y. 2007) (conducting trial and rendering judgment on debtors' claims for misappropriation of
    customer lists and other trade secrets); *Am. Preferred Prescription, Inc. v. Health Mgmt., Inc. (In re Am. Preferred
26  Prescription, Inc.)*, 186 B.R. 350 (Bankr. E.D.N.Y. 1995) (ruling on debtor's preliminary injunction motion seeking
    to enjoin another party from disclosing trade secrets).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

**D.    This Court May Have Jurisdiction Apart From 11 U.S.C. § 1334.**

The fifth *Cedar Funding* factor also favors denial of the Debtor's remand motion because there may be diversity of citizenship among the parties to the Litigation, giving rise to federal jurisdiction under 28 U.S.C. § 1332.  The Debtor is a limited liability company, so its location, for diversity purposes, is determined by the domicile of its members.  *See Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006) ("an LLC is a citizen of every state of which its owners/members are citizens").  The Debtor's members are Mr. Papen, who has stated that his domicile is in Oregon, and FWH Holdings, LLC, which appears to be a Delaware limited liability company.[10]  Machine Zone is located in California.[11]  This would create complete diversity.  If one were to look through FWH Holdings, LLC, for diversity purposes, the Debtor has advised that its sole member is Fred Hsu.  Mr. Hsu was a Washington resident.[12]  The Debtor has recently asserted that Mr. Hsu changed his domicile to California.  Without conceding that it would be appropriate to look through FWH Holdings, LLC for diversity purposes, Machine Zone has served discovery requests relating to the assertion that Mr. Hsu has changed his domicile from Washington to California.  Callagy Decl. at ¶ 14 and Ex. 12.  As of the date of this filing, Machine Zone has not received responses to its discovery requests.  Thus, the existence of complete diversity in this case is uncertain, and potentially subject to dispute.

Even where the only basis for jurisdiction is 28 U.S.C. § 1334, "[l]iquidating … claims for purposes of distribution, although non-core, is central to the completion of the administration of" bankruptcy estates.  *In re Roman Catholic Archbishop of Portland in Or.*, 338 B.R. at 421.

**E.    The Litigation Is Closely Related to This Bankruptcy Case.**

The sixth *Cedar Funding* factor supports denial of remand because, as noted above, the damages alleged in the Litigation are potentially among the Debtor's largest assets and liabilities,

---

[10] *Available at* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (type "FWH Holdings, LLC" in Entity Name box).
[11] *See* Exhibit B hereto.
[12] Callagy Decl. at ¶ 13 and Ex. 11.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

1 and the outcome of the Litigation will have a significant – perhaps dispositive – impact on the

2 Debtor's bankruptcy case. The transcript from the first-day hearing reflects the Debtor's and the

3 first lien lender's views that the Litigation is a key matter in the chapter 11 case. *See*, *e.g*., Tr. at

4 6, 19.

5 Machine Zone's claim for approximately $23 million, including any associated right of

6 setoff, will have to be dealt with in any chapter 11 plan that may be proposed by the Debtor. In

7 addition, as discussed above, this Court may be asked to estimate Machine Zone's claim

8 pursuant to Section 502(c) of the Bankruptcy Code and/or to address temporary allowance of

9 Machine Zone's claim for voting purposes under Rule 3018(a) of the Federal Rules of

10 Bankruptcy Procedure. And, to the extent the Debtor obtains any recovery from Machine Zone

11 in excess of Machine Zone's recovery from the Debtor, that could be a source of funding for

12 payment of creditors. The Court may also need to evaluate the Litigation in connection with a

13 plan feasibility analysis and potentially also in connection with other confirmation issues.

14 Indeed, it is unlikely that the Debtor's bankruptcy will be resolved *without* resolution of the

15 Litigation. Under these circumstances, "[a] closer connection is virtually unimaginable." *In re*

16 *Neel*, 2016 WL 3922904 at *5 (noting close connection of removed litigation to the debtor's

17 bankruptcy case as a factor weighing against remand).

18 **F.      The Litigation Is Not a Core Proceeding.**

19 Neither the Debtor nor Machine Zone assert that the Litigation is a core proceeding,

20 accordingly it is not necessary to determine "the substance rather than the form of an asserted

21 core proceeding," and this factor does not apply. *In re Roman Catholic Archbishop of Portland*

22 *in Or.*, 338 B.R. 421 (factor requiring analysis of the substance of "asserted core proceeding" is

23 inapplicable where the proceeding is non-core).

24 **G.      There Is No Benefit to Severing State Law Matters.**

25 Whether it is feasible to sever state law matters, there is no benefit to doing so in light of

26 the inextricable relationship between the Litigation and the Debtor's bankruptcy case. There

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1  would be no advantage to the Court, the parties to the Litigation, or the Debtor's creditors in

2  putting the Debtor's bankruptcy in limbo while the Litigation is remanded to state court, only to

3  have the ultimate outcome of that Litigation enforced in this Court.  Retaining jurisdiction over

4  the Litigation will permit this Court to schedule hearings, set deadlines, and otherwise administer

5  the Litigation and the Debtor's bankruptcy case in a uniform manner, without the inefficiency

6  inherent in attempting to coordinate proceedings with the state court.

7  **H.    The Litigation Will Not Unduly Burden the Bankruptcy Court's Docket.**

8  Retaining jurisdiction over the Litigation will require some of this Court's resources.  But

9  that fact cannot possibly be a basis for remand, or else every removed case would be remanded,

10 because every litigation takes up some of the court's time.  This Litigation should not unduly

11 burden the Court's docket; it is a discrete dispute focused on issues of contractual interpretation.

12 Machine Zone intends to conduct the Litigation efficiently and in a manner calculated to avoid

13 unnecessary disputes.  Indeed, efficiency and avoidance of duplicated effort was the motivation

14 behind Machine Zone's decision to remove and to seek transfer of the Litigation.  While the

15 amounts at stake in the Litigation are substantial, Machine Zone does not anticipate that the

16 Litigation would require an inordinate amount of the Court's time, in comparison to other

17 complex civil litigation matters that the Court doubtless has had before it.[13]

18 Moreover, given the relationship between the Litigation and the Debtor's bankruptcy

19 case, it is inevitable that this Court would have significant involvement with issues relating to the

20 Litigation even if the Litigation were remanded.  In addition to the issues discussed above that

21 are likely to arise in connection with plan confirmation – which will require the Court's

22 substantive attention to the Litigation and Machine Zone's claims therein – this Court will be

23
_____

24 [13] The Debtor points out that if the Litigation were to go to trial, it would likely require some of the District Court's time as well, since a jury trial would presumably be conducted in the District Court rather than in this Court.  *See* Motion at 19.  However, in light of the order of reference, we assume this Court would preside in the first instance

25 over pre-trial matters, *see* District Court Local Rule 2100-8(a), and if the Litigation were to go to trial, it should not be a particular burden on the District Court, which routinely presides over similar – and often significantly more

26 complex – cases.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1 also called upon to address applications for professional retention and compensation relating to

2 the Litigation, matters regarding financing of the Litigation (including the recently-raised issues

3 regarding Mr. Papen's initially undisclosed potential involvement in that financing), and

4 consideration under Bankruptcy Rule 9019 of any settlement that may be reached in the

5 Litigation. Counsel for the other major parties in the chapter 11 case, including the creditors'

6 committee and Bank of the West, are located in Oregon and will surely be interested in the

7 Litigation, given the size and importance of the parties' claims. If the Litigation is pending in

8 this Court, it will be easier for those and other interested parties to monitor the proceedings and

9 attend hearings as they deem appropriate. Given the central role that the Litigation will play in

10 the chapter 11 case, that fact weighs against remand.

11 **I.     Removal of the Litigation To This Court Was Not Forum Shopping.**

12       Machine Zone did not remove this action in order to "forum shop" or obtain some sort of

13 strategic litigation advantage. Indeed, Machine Zone has prevailed thus far in state court. But,

14 the Debtor chose to move to Oregon and to file bankruptcy in this District, and Machine Zone

15 removed the Litigation because it believed it would be more efficient for the Litigation to

16 proceed in the same forum as the Debtor's bankruptcy case, particularly in light of the close

17 relationship between the Litigation and the Debtor's bankruptcy.[14] Far from forum shopping,

18 removal is consistent with the principle that "[t]he 'centralized resolution of bankruptcy claims'

19 and 'the avoidance of piecemeal litigation' are fundamental purposes of the Bankruptcy Code."

20 *In re Rader*, 488 B.R. 406, 416 (B.A.P. 9th Cir. 2013). In addition, the Debtor's reliance on an

21

---

22 [14] The Debtor appears to have moved its headquarters from California to Oregon, presumably for the purpose of being able to have the chapter 11 case proceed in Oregon as a more convenient venue, close to where its principal –
23 Jeffrey Papen – who the Debtor has represented is central to the Litigation – resides. But, having done so, the Debtor now seeks to avoid litigating in Oregon. In fact, the Debtor has made contradictory allegations regarding its
24 headquarters: the Debtor alleged in its state court Complaint in December 2015 that it was headquartered in California, Callagy Decl. at ¶ 4, but has since disclosed in this chapter 11 case that it was headquartered in Oregon at the same time. *See* Statement of Financial Affairs (ECF No. 112), at 6. The Debtor cannot credibly claim to be
25 headquartered in two different states at the same time, one a more convenient forum for its chapter 11 case but not a convenient forum for Litigation that, by its own admission, is inextricably linked to the chapter 11 case, and the
26 other a more convenient forum for the Litigation but not for the chapter 11 case.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

1  alleged forum selection clause in the Agreement is incorrect.  The Agreement contained no such

2  forum selection clause, but rather, a choice of law provision.  Callagy Decl., Ex. 1 § 17.

3  **J.      The Right to a Jury Trial Does Not Support Remand.**

4  Remand is not necessary to preserve either party's right to a jury trial.  The District

5  Court's rules recognize the ability of this Court to determine whether the right to a jury trial

6  exists and, if so, to conduct jury trials upon consent of the parties and approval by a District

7  Court judge. D. Or. L. R. 2100-8(a).  If the parties do not consent, or the District Court judge

8  does not approve a jury trial in this Court, the same rule provides that the bankruptcy court will

9  conduct pretrial proceedings "up through lodging of the pretrial order, unless reference is

10  withdrawn." *Id.*  Thus, remand to the California state court is not necessary to protect the

11  parties' jury trial rights.

12  **K.      The Only Parties to the Action Are Machine Zone and the Debtor.**

13  The twelfth and fourteenth *Cedar Funding* factors – the presence of non-debtor parties

14  and the possibility of prejudice to other parties – do not support remand.  The only parties to the

15  Litigation are Machine Zone and the Debtor.  There are no other parties to the Litigation that

16  could be prejudiced by conducting the Litigation in this Court.

17  As noted above, counsel for the other major parties in the chapter 11 case, including the

18  creditors committee and Bank of the West, are located in Oregon.  If the Litigation is pending in

19  this Court, it will be easier for those and other interested parties to monitor the proceedings and

20  attend hearings as they deem appropriate.  Given the central role that the Litigation will play in

21  the chapter 11 case, that fact weighs against remand.

22  **L.      Comity Does Not Support Remand.**

23  When a case has not progressed significantly in state court, courts generally regard

24  comity as a neutral factor that does not weigh in favor of remand.  *Stichting Pensioenfonds ABP*

25  *v. Countrywide Fin. Corp.*, 447 B.R. 302, 312 (C.D. Cal. 2010) (comity did not require remand

26  of a case that was "in its infancy and was removed before any motions to dismiss or responsive

PAGE  19-   OBJECTION OF MACHINE ZONE TO DEBTOR'S
          AMENDED MOTION FOR ABSTENTION AND REMAND

132252723.3

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

1  pleadings were filed."); *Senorx v. Coudert Bros., LLP*, 2007 WL 1520966 at *3 (N.D. Cal. May

2  24, 2007) ("Comity does not favor remand in this case.  Though the case was before the state

3  court for some time, the court had not made significant progress."); *Cox v. Holcomb Fam. Ltd.*

4  *P'ship*, 2015 WL 128001 at *2 (Bankr. D. Or. Jan. 8, 2015) ("I do not think comity is implicated

5  here, where the complaint was removed from state court promptly … Comity is a neutral

6  factor."); *In re Maria Vista Estates*, 2016 WL 1381769 at *14 (Bankr. C.D. Cal. April 5, 2016)

7  (comity does not warrant remand when a case had been pending in state court for only a short

8  time).  The Litigation was in the early stages at the time of the Debtor's bankruptcy petition and

9  the subsequent removal of the Litigation to this Court, and all deadlines, including the trial date,

10  have since been vacated by the state court.  Accordingly, comity does not support remand.

11                                **CONCLUSION**

12         For the foregoing reasons, Machine Zone respectfully requests that the Court deny the

13  Debtor's remand and abstention motion, retain jurisdiction over the Litigation for further

14  proceedings in this Court, and afford such other relief as is just and appropriate.

15  DATED:  August 8, 2016                **PERKINS COIE LLP**

16

17                                By: /s/ Douglas R. Pahl
                                       Douglas R. Pahl, OSB No. 950476
18                                     DPahl@perkinscoie.com
                                       Brian A. Jennings, Admitted *Pro Hac Vice*
19                                     BJennings@perkinscoie.com
                                       1120 N.W. Couch Street, 10th Floor
20                                     Portland, OR  97209-4128
                                       Telephone:  503.727.2000
21                                     Facsimile:  503.727.2222

22                                     Michael L. Bernstein, Admitted *Pro Hac Vice*
                                       Michael.Bernstein@aporter.com
23                                     Arnold & Porter LLP
                                       Telephone:  202.942.5577
24                                     Facsimile:  202.942.5999

25                                     Attorneys for Machine Zone, LLC

26

PAGE  20-   OBJECTION OF MACHINE ZONE TO DEBTOR'S
            AMENDED MOTION FOR ABSTENTION AND REMAND

132252723.3

                              **Perkins Coie LLP**
                       1120 N.W. Couch Street, 10th Floor
                          Portland, OR  97209-4128
                             Phone:  503.727.2000
                              Fax:  503.727.2222

Case 16-03083-pcm    Doc 32    Filed 08/08/16

# CERTIFICATE OF SERVICE

2    I hereby certify that on the date set for the below I electronically filed the foregoing

3    **OBJECTION OF MACHINE ZONE, INC. TO DEBTOR'S AMENDED MOTION FOR ABSTENTION**

4    **AND TO REMAND** with the Clerk of Court using the CM/ECF system, which will send a notice of

5    electronic filing to all CM/ECF participants, and I served a true and correct copy of the foregoing

6    by standard first class mail to the following:

7

8    J. Mark Thacker
      Ropers, Majeski, Kohn & Bentley

9    50 W. San Fernando St #1400
      San Jose, CA 95113

10

11    DATED this 8th of August, 2016

12                                                  PERKINS COIE LLP

13                                                  /s/ Douglas R. Pahl

14                                                  Douglas R. Pahl, OSB No. 950476
                                                    Attorneys for Machine Zone, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

PAGE   1-    CERTIFICATE OF SERVICE

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

132252723.3

Case 16-03083-pcm    Doc 32    Filed 08/08/16